**FOR PUBLICATION**

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

|  |  |
|---|---|
| TIMOTHY McDONALD, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Civil No. 2004-93 |
| JANE LOWE DAVIS, INNOVATIVE | ) |
| COMMUNICATION CORPORATION, THE | ) |
| DAILY NEWS PUBLISHING COMPANY, | ) |
| INC., and JASON ROBBINS, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**ATTORNEYS:**

**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
    *For the plaintiff.*

**Kevin A. Rames, Esq.**
St. Croix, U.S.V.I.
    *For the defendants.*

**<u>MEMORANDUM OPINION</u>**

**GÓMEZ, C.J.**

    Before the Court is the motion of the defendants, Jane Lowe
Davis, The Daily News Publishing Company and Jason Robbins
(together, the "Defendants"), for summary judgment against the
plaintiff, Timothy McDonald ("McDonald").[1]

---

    [1] By order dated March 14, 2008, the Court stayed this
matter with respect to defendant Innovative Communication
Corporation.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 2

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Daily News Publishing Company is a Virgin Islands corporation that publishes The *Virgin Islands Daily News* ("The *Daily News*"), a newspaper distributed throughout the U.S. Virgin Islands.  At all times relevant, Jane Lowe Davis ("Davis") and Jason Robbins ("Robbins") were employed at The *Daily News*.  Davis was the executive editor and Robbins was the deputy executive editor.[2]  McDonald is a news reporter with several years of journalism experience.

On April 1, 2003, Davis sent McDonald a letter, offering him employment as a reporter at The *Daily News* at a yearly salary of $37,500, plus $3,000 in moving expenses.  McDonald accepted and moved to the Virgin Islands from Florida.  His two-year term commenced on April 21, 2003.  Over the next several months of his employment, McDonald reported on a number of stories for The *Daily News*.

In late November 2003, McDonald traveled from the Virgin Islands to Florida to address a family matter.  On returning to the Virgin Islands several days later, he was summoned by Davis and Robbins to discuss his absence from work.  After that meeting, McDonald went home and did not thereafter return to

---

[2]  At all times relevant, Davis was also the chief executive officer of The Daily News Publishing Company.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 3

work.  That day -- in early December 2003 -- was his last at The *Daily News*.

This ten-count action followed.  McDonald asserts the following claims: misrepresentation; breach of contract; constructive and wrongful discharge; defamation; assault; fraud; intentional and negligent infliction of emotional distress; and abuse of process.  He also alleges violations of the federal and local Fair Labor Standards Act and has asserted a punitive damages claim.

The Defendants now seek summary judgment against McDonald on all ten counts in the complaint.[3]  McDonald has filed an untimely opposition.[4]

---

[3]  All references to the complaint are intended to refer to McDonald's second amended complaint, unless otherwise indicated.

[4]  The Defendants' summary judgment motion was filed on November 14, 2008.  Therefore, McDonald's opposition was due by December 4, 2008. *See* LRCi 56.1(b) (2008).  McDonald did not file his opposition by that date.  Instead, on that date, McDonald moved for an extension of time until December 29, 2008.  The Court did not rule on that motion.  McDonald also failed to file his opposition on December 29, 2008.  Instead, on that date, McDonald again moved for an extension of time, this time requesting an additional fifteen days.  On January 9, 2009, the Court ruled on McDonald's second motion for an extension, ordering him to respond no later than January 15, 2009.  McDonald did not respond by that date.  Instead, he filed his opposition on January 16, 2009.  As such, the opposition is untimely.

The sequence of events described above suggests that McDonald is operating under at least two ill-founded assumptions. The first assumption is that moving for an extension of time to file a document, tolls the deadline for filing that document.

McDonald v. Davis, et al.
Civil No. 2004-93
Memorandum Opinion
Page 4

On February 17, 2009, the Court held a final pretrial
conference with the parties.  McDonald thereafter moved to amend
his complaint to assert a constructive discharge claim and a
wrongful discharge claim.

After reviewing the record, the Court determined that the
second amended complaint, liberally construed, already asserts
both a constructive discharge claim and a wrongful discharge
claim.  Accordingly, the Court denied McDonald's motion to amend.

The Court held another conference with the parties on
February 24, 2009.  At that conference, the Court ordered the
Defendants to file any additional dispositive motions by February
27, 2009 and McDonald to respond to any such motions by March 2,
2009.

_____

That assumption, if true, would permit litigants to "manipulate
the Court's schedule to suit their needs simply by filing
successive motions for extensions of time." Addie v. Kjaer, Civ.
No. 2004-135, 2008 U.S. Dist. LEXIS 100508, at *11 n.5 (D.V.I.
Dec. 11, 2008).  The second assumption is that a litigant is at
liberty to file a document on a date of his choosing rather than
the date by which the Court unequivocally orders the document to
be filed.  That assumption, like the first, undermines the
Court's exclusive authority to administer its docket. See United
States v. Wecht, 484 F.3d 194, 217 (3d Cir. 2007); Yakowicz v.
Pennsylvania, 683 F.2d 778, 784 (3d Cir. 1982).

Given McDonald's violations, the Court admonishes McDonald,
as it does all litigants, to hew strictly to this Court's orders.
See Garza v. Allstate Tex. Lloyd's Co., 284 Fed. Appx. 110, 113
(5th Cir. 2008) (unpublished) ("Adherence to such scheduling
orders is critical in maintaining the integrity of judicial
proceedings.") (footnote, alterations and quotation marks
omitted).

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 5

The Defendants have timely filed a supplemental dispositive motion.  McDonald has filed a response to that motion.[5]

The Court will address both the original motion and the supplemental motion in this Opinion.

## II.  <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985).  The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  "[T]here is no issue for trial unless there is sufficient

_____

[5]  McDonald's response, if any, was due by March 2, 2009. McDonald did not file his response on that date.  Instead, on March 4, 2009, McDonald moved for an extension of time to file his response later that day.  The Court granted the request. McDonald's response was filed on March 4, 2009.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 6

evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

#### A. Count One and Count Six

In Counts One and Six, McDonald asserts a misrepresentation claim[6] and a fraud claim, respectively. He alleges that the Defendants' false statements about the reputation of The *Daily News* and the nature of his position induced him to accept employment as a reporter. Specifically, he claims that the Defendants knowingly misrepresented that The *Daily News* was "the best small newspaper in America." (Second Am. Compl. ¶ 8.) He

---

[6] McDonald does not specify whether he asserts a negligent or intentional misrepresentation claim. His recurrent allegation, however, that the Defendants "knowingly" made false statements, suggests that Count One asserts an intentional misrepresentation claim.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 7

further claims that the Defendants falsely represented that he

would be hired as a "Sailing/Marine and Sportswriter[,]" (*id.* ¶

10), when in fact he was assigned to cover relatively few

nautical sporting events.

To prevail on a claim for intentional misrepresentation, a

plaintiff must show: (1) that the defendant made a representation

of a material fact; (2) knowing the representation to be false

when it was made; (3) with the intent that the plaintiff would

act on the statement; and that (4) the plaintiff reasonably

relied upon the statement; (5) to his detriment. *In re Tutu Water*

*Wells Contamination Litig.*, 32 F. Supp. 2d 800, 805 (D.V.I. 1998)

(citation omitted). Similarly, a plaintiff may succeed on a

common law fraud claim by proving "(1) a false representation of

material fact, (2) the defendant's intent that the statement be

acted upon, (3) reliance upon such a statement by the persons

claiming to have been deceived, and (4) damages." *Charleswell v.*

*Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 568-69 (D.V.I.

2004) (citations omitted).

The Defendants argue that the claims asserted in Counts One

and Six are unsupported by any evidence in the record. They rely

on email correspondence between McDonald and Davis in the months

preceding McDonald's employment. In one such email, Davis wrote

to McDonald, in part:

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 8

> We are very interested in discussing *the Sports
> position* with you. . . . We also want you to carefully
> consider . . . working for a hard-driving, high-
> production small daily . . . and *reporting such things
> as Biddy League basketball*, adult recreation and other
> sports events in addition to the boating and marine
> events and other top-notch sports.  *Our bread-and-
> butter coverage is the minor stuff.*

(Defs.' Mem. in Support of Mot. for Summ. J., Exh. 4, at 2)

(emphasis supplied).

In response to that email, McDonald replied, in pertinent

part:

> *The job sounds terrific.  I don't mind covering the
> "minor" sports.  I enjoy it.*  One of the reasons I
> switched from sports a few years back is I got tired of
> the pack mentality of Super Bowls, World Series, NBA
> Finals, etc.  I've always thought one of the duties of
> a community paper is to get as many names in there as
> possible.

(*Id.* at 1) (emphasis supplied).

This correspondence leaves little doubt that the Defendants

clearly informed McDonald of the panoply of topics he would be

asked to cover if he were employed as a *Daily News* reporter.

Those topics unequivocally encompass high-level, professional

sporting events and low-profile, amateur sporting events.  The

parties' correspondence further demonstrates that McDonald, when

apprised of this job description, enthusiastically responded that

it appealed to him and that he enjoyed covering non-professional

sporting events that he himself described as "minor."  Based on

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 9

this evidence, the Court finds that the Defendants have met their initial summary judgment burden of showing the absence of a false representation.  The burden of persuasion thus shifts to McDonald to show the existence of some genuine issue of material fact.

In an effort to meet his burden, McDonald first relies on a job advertisement that The *Daily News* posted on a website.  That posting states:

> The Virgin Islands Daily News, a Pulitzer-Prize winning newspaper, seeks a sports reporter/editor with experience in covering sailing, boating, deep-sea fishing plus scholastic and recreation league sports.

(Pl.'s Opp'n to Defs.' Mot. for Summ. J., Exh. 1 at 1.)

McDonald responded to The *Daily News*' posting by applying for a position via email on February 24, 2003.  In that email, McDonald wrote:

> Please consider this application for your sailing/marine and sports writer opening. . . . I started my career as a sportswriter, and I've reported on and written extensively about world-class sailing, deep-sea fishing and recreational boating.

(*Id.*, Exh. 5 at 1.)

Several weeks after McDonald sent the above email, he received the email from Davis, partially reproduced above, in which Davis expressed an interest in discussing the position with him.

Significantly, none of the evidence on which McDonald relies

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 10

demonstrates that the Defendants misrepresented any material fact

about McDonald's duties and responsibilities as a reporter.  The

*Daily News*' job posting did not state any fact whatever other

than the newspaper's interest in hiring a candidate who

corresponded to the posting's description. *See*, *e.g.*, *Chambliss*

*v. GMC*, 108 F.3d 1176, 1181-82 (9th Cir. 1997) (affirming summary

judgment on a misrepresentation claim based on advertisements

because they "do not make any affirmations of fact or promises").

Likewise, in her email to McDonald, Davis expressed her interest

in discussing the possibility of McDonald's employment.

Importantly, she explicitly represented that the position for

which McDonald was under consideration required reporting on the

very events that McDonald now dismisses as beyond the scope of

what he was hired to cover.  McDonald advances no persuasive

explanation of how or why Davis's clear statements to him on this

point constitute misrepresentations.[7]  As such, to the extent

---

[7] McDonald makes the unconvincing argument that the
"Defendants' subsequent actions of denying that he was ever hired
as [a sailing/marine reporter] are also clearly fraudulent
misrepresentations." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at
9.)  McDonald overlooks the fact that fraud claims require "a
showing that, *at the time the allegedly fraudulent statement was
made*, it was an intentional misrepresentation." *Ass'n Ben. Servs.
v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) (emphasis
in original).  That is, a plaintiff must show that "when the
promise was made, the promisor had no intent to fulfill it; if
the promisor simply later changed his mind, an action for fraud
will not lie." *Id*. (citation omitted).  McDonald has not even

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 11


McDonald's misrepresentation and fraud claims are based on the

Defendants' statements about the nature of his position, he has

fallen short of his burden of showing that there are any genuine

questions of material fact in dispute.[8]

To the extent McDonald predicates his misrepresentation and

fraud claims on Davis's statement that The *Daily News* is "the

best small newspaper in America," such a statement is

incontestably non-actionable puffery. *See Alpine Bank v. Hubbell*,

---

alleged, much less shown by way of competent evidence, that the
Defendants intended not to follow through on a promise to him.
*See*, *e.g.*, *id.* (affirming summary judgment on a fraud claim where
the plaintiff "failed to raise a genuine issue of fact as to
fraudulent intent").

[8] McDonald also seeks support for his position in Robbins'
deposition testimony.  During his deposition, Robbins testified
that after The *Daily News* had received McDonald's application, an
insert in the newspaper entitled "The Nautical Scene" had already
been assigned to another individual. (*See* Robbins Dep. 13:12-17,
Dec. 19, 2006.)

McDonald relies on Robbins' testimony to support his
contention that the Defendants knew that the position for that
insert had already been filled when they discussed the
possibility of employment with McDonald.  That contention may be
true, but it is not germane to McDonald's claim.  McDonald has
adduced no evidence that the Defendants specifically advertised a
position for The Nautical Scene or that they represented that
McDonald was being considered for such a position.  In his
application to The *Daily News*, McDonald does not mention The
Nautical Scene.  Davis does not mention it in her email to
McDonald, nor does McDonald mention it in his reply email to
Davis.  Finally, there is no mention of The Nautical Scene in
either the fax cover sheet accompanying the Defendants' offer
letter to McDonald or the offer letter itself.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 12

550 F.3d 1274, 1285 (10th Cir. 2008) ("[P]uffery cannot be the
basis of any misrepresentation claim; whether the
misrepresentation was made negligently or intentionally, a
reasonable person would not rely on it.") (citations omitted);
*Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)
("Puffery is distinguishable from misdescriptions or false
representations of specific characteristics of a product.  As
such, it is not actionable."); *see also Cook, Perkiss and Liehe,
Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 246
(9th Cir. 1990) (explaining that statements are non-actionable
puffery where they constitute "*general assertions of superiority*"
instead of "factual misrepresentations") (emphasis supplied).

Accordingly, the Court will grant the Defendants' motion
with respect to Count One and Count Six.

**B.   Count Two**

In Count Two, McDonald alleges that the Defendants breached
his employment contract by failing to assign him to cover marine
and nautical sporting events.  He claims that the Defendants
instead tasked him with covering what he considers small-bore
sporting events that were not supposed to be among his duties as
a reporter.

To establish a breach of contract claim under Virgin Islands
law, a plaintiff is required to prove that there was (1) an

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 13

agreement; (2) a duty created by that agreement; (3) a breach of
that duty; and (4) damages. *Galt Capital, LLP v. Seykota*, Civ.
Nos. 2002-63 and 2002-134, 2007 U.S. Dist. LEXIS 92955, at *10
(D.V.I. Dec. 14, 2007) (citing *Stallworth Timber Co. v. Triad
Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997)).

The Defendants urge the Court to grant them summary judgment
on McDonald's breach of contract claim.  They argue that
McDonald's employment contract places no limit on the breadth of
events or issues that McDonald was hired to cover.  They rely on
the plain language of the contract itself to substantiate that
argument.

The contract on which the Defendants rely is the offer
letter that Davis sent to McDonald on April 1, 2003.  The offer
letter contains all of the material terms of a normal contract,
including McDonald's title, start date, work location, salary,
benefits and other pertinent information.  At the bottom of the
letter are two signature lines, one preceded by the words "I
accept," the other preceded by the words "I do not accept."
McDonald signed the former.  The offer letter, combined with
McDonald's unconditional acceptance of the offer, is tantamount
to a valid, binding contract.[9] *See*, *e.g.*, *Metoyer v. Chassman*,

---

[9]   "Whether a writing is an integrated agreement, and if so,
whether the agreement is completely or partially integrated are

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 14


504 F.3d 919, 936 (9th Cir. 2007) ("Together, the . . . offer

letter and [the plaintiff's] acceptance letter constitute an

integrated employment contract."), *cert. denied*, 129 S. Ct. 394

(2008); *Steinke v. Sungard Fin. Sys.*, 121 F.3d 763, 770-73 (1st

Cir. 1997) (similar).

The contract states, in pertinent part:

I am very pleased to offer you the position of reporter
for The Virgin Islands Daily News. . . .

(Defs.' Mem. in Support of Mot. for Summ. J., Exh. 5, at 2.)

The parties do not dispute that the offer letter constitutes

---

questions to be decided by the court prior to application of the
parol evidence rule." *Greenberg v. Tomlin*, 816 F. Supp. 1039,
1053 (E.D. Pa. 1993).  To determine whether an agreement is
integrated, a court compares both the alleged oral and written
agreements and decides whether "the parties, situated as were the
ones to the contract, would naturally and normally include the
one in the other if it were made." *Mellon Bank Corp. v. First
Union Real Estate Equity & Mortgage Invs.*, 951 F.2d 1399, 1405
(3d Cir. 1991) (quotation marks and citation omitted).  If the
alleged oral and written agreements "relate to the same subject
matter and are so interrelated that both would be executed at the
same time and in the same contract, the scope of the subsidiary
agreement must be taken to be covered by the writing." *Hershey
Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 995 (3d Cir. Pa.
1987) (quotation marks and citation omitted).

Here, both McDonald's employment contract and the parties'
correspondence regarding the details of McDonald's duties as a
reporter, bear on McDonald's position at The *Daily News*.  In the
Court's view, any discussion in the parties' correspondence
regarding McDonald's position would "naturally and normally" have
been included in McDonald's employment contract.  As such, the
Court finds that the employment contract represents the parties'
full and complete agreement. *See*, *e.g.*, *Steinke*, 121 F.3d at 770-
71; *Mellon Bank Corp.*, 951 F.2d at 1406.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 15

McDonald's employment contract.  McDonald argues, however, that
extrinsic evidence is needed to understand that contract.
Specifically, he relies on extrinsic evidence to establish that
he was hired not as a general reporter but as a marine sports
reporter.  To the extent McDonald seeks to circumvent the
dictates of the parol evidence rule on the basis of an alleged
ambiguity in his employment contract, that attempt fails because
there is no such ambiguity.

It is well-settled that "the intent of the parties to a
written contract is contained in the writing itself."
*Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 92
(3d Cir. 2001) (quotation marks and citation omitted).  Where
that intent is clear and unambiguous, "there is no need to resort
to extrinsic aids or evidence, instead, the meaning of a clear
and unequivocal written contract must be determined by its
contents alone." *Id.* at 92 (quotation marks and citation
omitted); *see also CTF Hotel Holdings v. Marriott Int'l*, 381 F.3d
131, 138 (3d Cir. 2004) (citation and footnote omitted).
"Contractual language is ambiguous if it is reasonably
susceptible of different constructions and capable of being
understood in more than one sense." *Regents of the Mercersburg
College v. Rep. Franklin Ins. Co.*, 458 F.3d 159, 171 (3d Cir.
2006) (quotation marks and citation omitted).  To determine the

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 16

existence of a contractual ambiguity, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980).  Furthermore, a contract should be construed strictly against the draftsman. *See Bouton v. Litton Industries, Inc.*, 423 F.2d 643, 646 (3d Cir. 1970) (citations omitted).

Here, the parties' contract clearly and unambiguously provides that McDonald was hired as a reporter.  There is no language in the contract that specifies what type of reporter McDonald would be or what stories he would be assigned to cover.  Indeed, as the Defendants correctly remark, the contract does not tie their hands, so long as McDonald is given the work of a reporter.  McDonald neither claims nor submits any evidence that he was ever treated as anything other than a reporter.[10]  As such, it is undisputed that the Defendants did not breach what McDonald brands as a duty to treat him as a marine sports reporter because no such duty existed.  The Court therefore finds

---

[10]  In his complaint, McDonald alleges that he was given editing, as opposed to pure reporting, assignments.  He has not, however, provided any evidence to bolster that allegation.  Nor does he establish that such assignments were incongruous with his position as a reporter.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 17

that the Defendants have met their initial burden of showing the

absence of genuine questions of material fact with respect to

McDonald's breach of contract claim.   The burden of persuasion

now shifts to McDonald.

In support of his breach of contract claim, McDonald refers

the Court to a welter of extrinsic evidence to show that the

Defendants reneged on their alleged promise to assign him to

cover marine and nautical sporting events.   He relies, for

instance, on deposition testimony as well as pre-contract emails

between the Defendants and himself.   In essence, McDonald

attempts to show that the parties' intent was something other

than what their written contract reflects.   The flaw in that

approach, however, is that the Court has already concluded that

the parties' contract is clear and unambiguous.   Resort to

extrinsic evidence, as McDonald urges, is therefore unnecessary

and even inappropriate.[11]  *See*, *e.g.*, *CTF Hotel Holdings*, 381 F.3d

_____

[11]   To the extent McDonald endeavors to show a latent
ambiguity in the parties' contract by reference to extrinsic
evidence about the parties' expectations, such an approach also
fails.   The Third Circuit has recognized the "built-in tension
between two principles" in deciding whether an ambiguity exists:

(1) a contract is not ambiguous, and thus must be
interpreted on its face without reference to extrinsic
evidence, if the court can determine its meaning
without any guide other than a knowledge of the simple
facts on which, from the nature of the language in
general, its meaning depends; and (2) contractual terms

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 18

at 138 ("The contracts here leave no ambiguity. . . . Therefore, extrinsic evidence such as the parties' correspondence can not properly be considered."); *see also Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001) ("[I]t is inappropriate to consider . . . extrinsic evidence when no ambiguity exists.") (other alteration, quotation marks and citation omitted).

---

that are clear on their face can be latently ambiguous, and [the] law permits courts to examine certain forms of extrinsic evidence in determining whether a contract is ambiguous.

*Bohler-Uddeholm Am., Inc.*, 247 F.3d at 94 (internal quotation marks and citations omitted).

The Third Circuit has resolved this tension by "allowing only extrinsic evidence of a certain nature to establish latent ambiguity in a contract; a court should determine whether the type of extrinsic evidence offered could be used to support a reasonable alternative interpretation under the precepts of Pennsylvania law on contract interpretation." *Id.* (footnote omitted; citing *Mellon Bank, N.A.*, 619 F.2d at 1011-14). The court has explained that "the key inquiry in this context will likely be whether the proffered extrinsic evidence is about the parties' objectively manifested linguistic reference regarding the terms of the contract, *or is instead merely about their expectations*." *Id.* at 94 n.3 (emphasis supplied; quotation marks and citation omitted). Importantly, the Third Circuit has made clear that "[t]he former is the right type of extrinsic evidence for establishing latent ambiguity . . ., *while the latter is not*." *Id.* (emphasis supplied; citation omitted).

Here, McDonald in no way suggests that the word "reporter" is susceptible to semantic disagreement. Rather, he asks the Court to consider extra-contract evidence of what the parties contemplated his duties as a reporter would specifically entail. Such evidence, however, is not to be considered under the circumstances presented here.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 19

Accordingly, the Court will grant the Defendants' motion with respect to Count Two.

## C.   Count Three

Count Three asserts claims for constructive discharge and for wrongful discharge under Virgin Islands law.

### 1.   Constructive Discharge

To succeed on a constructive discharge claim under the Virgin Islands Wrongful Discharge Statute, V.I. CODE ANN. tit. 24, §§ 71-76, a plaintiff is obligated to demonstrate that his employer made working conditions so difficult or unpleasant that a reasonable person in the plaintiff's position would feel compelled to resign. *See Harley v. Caneel Bay, Inc.*, 193 F. Supp. 2d 833, 838 (D.V.I. App. Div. 2002); *see also Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984) (noting that a court "need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign").  Constructive discharge is a fact-intensive inquiry. *Levendos v. Stern Entm't, Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988).  The following non-exhaustive list of factors is to be considered: "(1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 20

responsibilities; (6) unsatisfactory job evaluations." *Suders v.
Easton*, 325 F.3d 432, 445 (3d Cir. 2003), *vacated on other
grounds, Penn. State Police v. Suders*, 542 U.S. 129 (2004).
Another relevant consideration is "whether a plaintiff explored
alternative avenues to resolve the alleged . . . harassment or
workplace disturbances." *Id.*  No one factor is dispositive. *Duffy
v. Paper Magic Group*, 265 F.3d 163, 168 (3d Cir. 2001).  The
plaintiff's conduct "must be considered in light of the totality
of circumstances." *Suders*, 325 F.3d at 445.

      The Defendants endeavor to meet their burden by showing that
McDonald was fired rather than constructively discharged.  They
assert that when McDonald returned to work after his trip to
Florida, "Robbins told him not to bother coming back to work."
(Defs.' Statement of Undisputed Material Facts 3.)  In his
opposition papers, McDonald does not deny that assertion.
Instead, he states that "[t]here is no indication in the record
that he ever resigned and [he] has stated he never resigned."
(Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts and
Pl.'s Statement of Undisputed Material Facts 15.)

      Indeed, McDonald's deposition testimony, affidavit and
pleadings corroborate that McDonald himself believes that he was
fired, not constructively discharged.  During his deposition,
McDonald stated at least twice that he had been fired from The

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 21

*Daily News*.  On one occasion, McDonald was asked whether he was
working at the *Daily News* on December 4, 2003.  McDonald replied:
"I believe, if I'm not mistaken, that was my last day.  That was
the day they fired me." (McDonald Dep. 132:10-11, July 1-2,
2008.)  On another occasion, McDonald was asked about an incident
involving representatives from a debt collection agency that the
Defendants are alleged to have hired.  McDonald replied: "It was
either –– it was either the day after I was fired, or [a] couple
days after I was fired." (*Id.* at 188:23-24.)  In his opposition
papers, McDonald does not seek either to clarify or to qualify
those sworn statements.  Instead, he actually confirms that he
was fired.  Attached to McDonald's opposition is an affidavit in
which McDonald avers that he "was dismissed from [his] position"
at The *Daily News*. (McDonald Aff. ¶ 4, Jan. 16, 2009.)
Similarly, in his opposition brief, McDonald flatly states that
the Defendants fired him. (*See* Pl.'s Opp'n to Defs.' Mot. for
Summ. J. at 18.)  He also "requests the Honorable Court to assume
that he was terminated and did not resign." (*Id.* at 20.)

     McDonald's acknowledgment that he was fired suggests that
summary judgment for the Defendants on McDonald's constructive
discharge claim, is appropriate. *See*, *e.g.*, *Mackenzie v. Potter*,
219 Fed. Appx. 500, 503 (7th Cir. 2007) (affirming summary
judgment for the defendant employer on a constructive discharge

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 22

claim where the plaintiff "did not show that she was
*constructively* discharged because she was *actually* fired")
(emphasis in original); *Jordan v. City of Gary*, 396 F.3d 825,
836-37 (7th Cir. 2005) ("We can make it no plainer than to
reiterate that constructive discharge refers to a situation in
which an employee is not fired but quits.") (quotation marks and
citation omitted).

Even if McDonald had not conceded under oath that he was
fired, his constructive discharge claim would still not survive
summary judgment.  An intensive review of the record yields
practically no evidence of an intolerable working environment or
that McDonald made any effort to address alleged workplace
unpleasantness.  McDonald's contention that he was demoted when
he was assigned to cover sporting events he considered beyond the
scope of his responsibilities, is undercut by the Court's
conclusion that his employment contract authorized the Defendants
to make such assignments.  Even taking that contention as true,
it certainly does not demonstrate that McDonald's working
conditions were "so unpleasant or difficult that a reasonable
person in the [his] shoes would resign." *Persico v. City of
Jersey City*, 67 Fed. Appx. 669, 676 (3d Cir. 2003) (unpublished;
citation omitted).

McDonald also complains that the Defendants "used" him to

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 23

pursue their vendetta against a Virgin Islands senator.  He
claims that in May 2003, unbeknownst to him, Davis altered an
article he had authored about a boxing match.  According to
McDonald, the altered version of the article included false
information about the senator but was nevertheless published
under McDonald's byline.  This sequence of events, even if true,
is simply not relevant to a constructive discharge claim.  In any
event, it in no way suggests that working conditions at The *Daily
News* were so intolerable that McDonald was forced to quit.
Indeed, such a suggestion is severely undermined by McDonald's
election to stay with The *Daily News* for several months after the
publication of the boxing article. *See*, *e.g.*, *Hipp v. Liberty
Nat'l Life Ins. Co.*, 252 F.3d 1208, 1236-37 (11th Cir. 2001)
(concluding that the district court erred by not granting summary
judgment for the defendant employer on a constructive discharge
claim where, among other things, the plaintiff "*stayed for
several months* after the allegedly discriminatory confrontations,
suggesting the confrontations were not so intolerable as to leave
him with no choice but to resign") (emphasis and footnote
omitted).

To the extent McDonald's constructive discharge claim rests
on his conversation with Davis and Robbins about the
circumstances of his trip to Florida, there is nothing in the

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 24

record to suggest that that conversation, even if it involved criticism and resulted in threatened disciplinary action, created intolerable working conditions. *See*, *e.g.*, *Devin v. Schwan's Home Serv.*, 491 F.3d 778, 790 (8th Cir. 2007) ("[F]eelings of being unfairly disciplined or criticized are insufficient to support a claim of constructive discharge.") (citation omitted); *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (explaining that a threat of termination does not constitute a constructive discharge).

McDonald's argument that the Defendants' alleged injurious comments about him after he left work in December 2003, is also deficient.  Those comments, even assuming they were uttered, came *after* McDonald's departure from The *Daily News*.  As a consequence, they could not have created an intolerable environment for him *during* his tenure there.

Accordingly, the Court will grant the motion with respect to Count Three's constructive discharge claim.

   **2.   Wrongful Discharge**

As was noted previously, McDonald asserts that he did not quit.  Rather, he asserts that he was fired.  Notwithstanding that concession, there are material facts in dispute as to whether that discharge was wrongful.  Accordingly, the Court will deny the Defendants' motion for summary judgment on Count Three's

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 25

wrongful discharge claim.

**D.   Count Four**

In Count Four, McDonald asserts a claim for slander,
defamation and libel *per se* or, alternatively, standard slander,
defamation and libel.  In his complaint, McDonald does not
spotlight the statements he deems defamatory.  Although his
opposition likewise does little in the way of elucidation on this
point, McDonald appears to designate two statements as
defamatory.  First, he alleges that the Defendants told a Florida
employment benefits referee that McDonald had quit, rather than
been fired from, his post at The *Daily News*.  Second, he alleges
that the Defendants told *Daily News* staff members that McDonald
had lied about the circumstances of his trip to Florida in
November 2003.

"[T]o be actionable a communication must be a misstatement
of fact capable of defamatory meaning that is of and concerning
the plaintiff." *McDowell v. Paiewonsky*, 769 F.2d 942, 946 (3d
Cir. 1985) (footnotes omitted).  "A communication is defamatory
if it tends so to harm the reputation of another as to lower him
in the estimation of the community or to deter third persons from
associating or dealing with him." Restatement (Second) of Torts §

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 26

559 (1977).[12]

To succeed on a defamation *per se* claim, a plaintiff must show that the defendant's defamatory statement imputes to the plaintiff: (1) a criminal offense; (2) a loathsome disease; (3) matter incompatible with his business, trade, profession, or office; or (4) serious sexual misconduct. Restatement (Second) of Torts § 570 (1977).  A plaintiff need not prove special damages such as monetary loss. *Id.*  Rather, a plaintiff need only prove general damages, that is, that his "reputation was actually affected by the slander, or that []he suffered personal humiliation, or both." *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 343 (3d Cir. 2005) (stating Pennsylvania law; quotation marks and citation omitted).

To prevail on a standard defamation claim, a plaintiff must prove (1) "a false and defamatory statement concerning another"; (2) "an unprivileged publication to a third party"; (3) "fault amounting at least to negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (1977); *see*

---

[12]  In the absence of local law to the contrary, the Restatements are the law of the Virgin Islands. *See* V.I. CODE ANN. tit. 1, § 4.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 27

*also Smart, Inc. v. V.I. Hous. Auth.*, 320 F. Supp. 2d 332, 340
(D.V.I. 2004) (citations omitted).

In support of their motion with respect to Count Four, the
Defendants first argue that none of the utterances of which
McDonald complains were shared with any individuals who were not
entitled to the information those utterances contained.  The
publication requirement of a defamation claim, however, means
simply "communication . . . to one other than the person
defamed." Restatement (Second) of Torts § 577 (1977).  Because
there is no dispute that the subject information was communicated
to at least one third person, the Defendants' argument in this
respect is unpersuasive.

The Defendants next maintain that their statements about
McDonald's lying about the circumstances of his Florida trip, are
privileged because those statements are true.  They also assert
that their statements to the Florida employment benefits referee
were conditionally privileged.  They rely on what they paint as
unrebutted record evidence that McDonald told the Defendants that
he had to attend to a family emergency in Florida when in fact
there was no emergency.

Unfortunately, the Defendants do not point to those parts of
the record on which they rely with respect to McDonald's
defamation claim. *See* LRCi 56.1(a)(1) (2008).  They do make

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 28

mention of specific portions of the record in their statement of
undisputed material facts.  None of those references, however,
meaningfully assist the Court in deciding whether the Defendants
have met their summary judgment burden. *See In re Bressman*, 327
F.3d 229, 237-38 (3d Cir. 2003) (citing *United States v. Four
Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)
("When the *moving* party has the burden of proof . . ., that party
must show *affirmatively* the absence of a genuine issue of
material fact: it . . . must show that, on all the essential
elements of its case on which it bears the burden of proof at
trial, no reasonable jury could find for the non-moving party."))
(emphasis in original).

Accordingly, the Court will deny the motion with respect to
Count Four.

**E.   Count Five**

Count Five asserts an assault claim.  McDonald alleges that
at some time after his departure from The *Daily News* in December,
2003, the Defendants dispatched a debt collection agency to his
home.  He alleges that three men armed with billy clubs came to
his home and spoke to him through his window.  The men allegedly
showed McDonald a photograph of himself taken from his cubicle at
The *Daily News* and told him not to leave St. Thomas because he
owed money.  McDonald alleges that the men quit the premises when

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 29

he threatened to call the police.

In the Virgin Islands, a defendant is subject to liability for assault if: (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) the plaintiff "is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965). "Imminent apprehension" means that the plaintiff "believe[s] that the act may result in imminent contact unless prevented from so resulting by the [plaintiff]'s self-defensive action or by his flight or by the intervention of some outside force." *Id.* § 24. "Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person." *Id.* § 31.

The Defendants argue that they are entitled to summary judgment on McDonald's assault claim because, according to them, McDonald has not alleged an overt threat of harm.[13]  They rely

_____

[13]  Although mentioned by neither party, the viability of McDonald's assault claim turns in the first instance on whether McDonald can establish an agency relationship between the Defendants and the three men described in the complaint.  Indeed, it is well-settled that the burden of proving the existence of an agency relationship is on the party attempting to charge the purported principal. *See Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262 (4th Cir. 1988) (stating Maryland law; citation

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 30

almost exclusively on *Davis v. Christian*, 46 V.I. 557 (D.V.I.

App. Div. 2005).  The significant factual disparities between

*Davis* and this matter make that reliance misplaced.[14]

---

omitted); *Associates Capital Services Corp. v. Loftin's Transfer
& Storage Co.*, 554 F.2d 188, 190 (5th Cir. 1977) (stating Alabama
law; citation omitted).  Circumstantial evidence may suffice to
establish an agency relationship. *See Pappas v. Middle Earth
Condominium Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992); *Citibank,
N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 691 (11th Cir.
1987) (stating Florida law; citations omitted).

     At her deposition, Davis testified that she hired a debt
collection agency she identified as White Collar Collections to
tell McDonald that he was obligated to reimburse The *Daily News*
for the $3,000 in moving expenses he had received.  McDonald
claims that the men who appeared at his home were from the
company Davis hired.  In an effort to substantiate that claim,
McDonald avers in an affidavit, in wholly conclusory fashion,
that the men were from an entity he identifies as National White
Collar Investigation. (*See* McDonald Aff. ¶ 4, Jan. 16, 2009.)  In
that same affidavit, however, McDonald concedes that the men
"never identified themselves as [National White Collar
Investigation] representatives.  They never stated why I owed
money [or] who I owed money to . . . ." (*Id.* ¶ 10.)  This
evidence does not help McDonald meet his burden of establishing
an agency relationship between the Defendants and the men who
allegedly assaulted him. *See Maldonado v. Ramirez*, 757 F.2d 48
(3d Cir. 1985) ("An affidavit that is essentially conclusory and
lacking in specific facts is inadequate . . . .") (quotation
marks and citation omitted).  His failure to establish such a
relationship is fatal to his assault claim against the
Defendants.

     [14]  The facts in *Davis* are simply too far afield of those
presented in this matter to provide any meaningful guidance.
Where the incident in *Davis* occurred in a public forum, the
incident McDonald describes occurred immediately outside his
home.  *Davis* did not involve a deadly weapon, while McDonald
contends that the debt collectors wielded billy clubs.  The
appellant in *Davis* alleged no threats by the appellee, while
McDonald alleges that the debt collectors warned him not to leave

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 31

Notwithstanding the Defendants' misplaced reliance, the Defendants are correct that McDonald has failed to allege or to provide evidence that he was placed in imminent apprehension of physical contact.  In his deposition testimony and affidavit, McDonald avers that he immediately warned the debt collectors that he would call the police if they did not leave his property and, after they had departed, left his home to stay with friends out of fear.[15]  Critically, the record contains neither an allegation nor competent evidence that the debt collectors exhibited any menacing or aggressive physical behavior to show that they intended to put McDonald in imminent apprehension of offensive contact. *See Douglass v. Sanok*, Civ. No. 2005-18, 2006 U.S. Dist. LEXIS 74561, at *34 (W.D. Va. Oct. 11, 2006) (granting summary judgment for the defendant where the plaintiff adduced no evidence that the defendant either touched the plaintiff or threatened to touch the plaintiff "in such a way as to cause her to fear an imminent touching").  There is also no allegation or evidence that the debt collectors' actions actually put McDonald in apprehension of imminent contact.  The absence of such

---

St. Thomas.

[15]  Specifically, McDonald avers that after the men left, "I gathered some belongings and left my apartment.  I did not stay at my apartment again, fearing that the men would return to assault or batter me." (McDonald Aff. ¶ 12, Jan. 16, 2009.)

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 32

allegations is fatal to McDonald's assault claim. *See Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo. Ct. App. 1998) ("Lacking such a fear of *imminent* peril the petition fails to allege an essential element for an assault claim.") (emphasis supplied).

Furthermore, assault liability attaches only where the victim believes that the defendant had *the ability* to carry out the threat of harm. Restatement (Second) of Torts § 33 cmt. a (1965). Here, it is undisputed that McDonald was inside his home and separated from the debt collectors by a wall and a window. Even if McDonald alleged that the debt collectors intended to put him in imminent apprehension of offensive contact and that he in fact was put in such imminent apprehension, the fact that he was inside his home behind closed doors while speaking to the debt collectors through a window, precludes his assault claim. *See, e.g., Austin v. Terhune*, 367 F.3d 1167, 1772 (9th Cir. 2004) (affirming summary judgment for the defendant, who "was separated from [the plaintiff] by the walls and window of the control booth[,]" and thus the defendant's "behavior never placed [the plaintiff] in apprehension of imminent offensive contact").

Accordingly, the Court will grant the Defendants' motion with respect to Count Five.

McDonald v. Davis, et al.
Civil No. 2004-93
Memorandum Opinion
Page 33

**F.   Count Seven**

In Count Seven, McDonald asserts a claim for intentional infliction of emotional distress.[16] The complaint does not make clear which allegations are meant to underpin that claim. Furthermore, McDonald has elected not to address the Defendants' arguments with respect to that claim.

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must allege conduct "so extreme or outrageous on its face that it falls outside the bounds of

---

[16] McDonald claims in the alternative that the Defendants are liable for negligent infliction of emotional distress. To prevail on such a claim, however, a plaintiff "must show that []he suffered physical injury as a result of [the] defendants' negligent conduct and that [the] defendants should have realized [their] conduct carried an unreasonable risk of causing such injury." *Smith v. V.I. Water & Power Auth.*, Civ. No. 04-148, 2008 U.S. Dist. LEXIS 95852, at *29 (D.V.I. Nov. 24, 2008) (citations omitted). As the Defendants correctly point out, McDonald has not even alleged, let alone submitted competent evidence, that he has been physically injured by the Defendants. That deficiency alone is fatal to his negligent infliction of emotional distress claim. *See*, *e.g.*, *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (affirming summary judgment because the plaintiff showed no physical harm); *Reed v. Nat'l Radio Astronomy Observatory*, Civ. No. 05-71, 2008 U.S. Dist. LEXIS 97913, at *13 (D.V.I. Nov. 17, 2008) (dismissing a negligent infliction of emotional distress claim because the plaintiff failed to describe any physical injury). Furthermore, McDonald really alleges only intentional conduct on the Defendants' part. Such conduct cannot form the basis of a negligent infliction of emotional distress claim. *See Smith*, 2008 U.S. Dist. LEXIS 95852, at *29-30 ("Intentional conduct . . . such as demoting or terminating an employee, cannot serve as the basis for a claim of negligent infliction of emotional distress.").

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 34

decency." *Clarke v. Abramson*, Civ. No. 2004-111, 2007 U.S. Dist.
LEXIS 78814, at *3 (D.V.I. Oct. 24, 2007) (citations omitted);
*see also Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v.
United States*, 981 F. Supp. 352, 369 (D.V.I. 1997) ("It is not
enough that the defendant acted with tortious intent or even that
he acted with malice."), *aff'd*, 176 F.3d 472 (3d Cir. 1999).
"[I]t is extremely rare to find conduct in the employment context
that will rise to the level of outrageousness necessary to
provide a basis for recovery for the tort of intentional
infliction of emotional distress." *McGreevy v. Stroup*, 413 F.3d
359, 370 (3d Cir. 2005) (quotation marks and citation omitted).

     In requesting summary judgment on Count Seven, the
Defendants rely on Virgin Islands case law.  According to the
Defendants, those cases stand for the proposition that discharge
from employment is rarely, if ever, grounds for an intentional
infliction of emotional distress claim.

     In *Fenton v. C&C Constr. & Maint., Inc.*, 48 V.I. 263 (V.I.
Super. Ct. 2007), for instance, the Superior Court of the Virgin
Islands granted summary judgment for the defendant employer,
reasoning that the employer's discretionary termination of the
plaintiff's employment could not support such a claim. *Id.* at
275.  The *Fenton* Court relied in turn on *Alvarez v. Pueblo Int'l*,
24 V.I. 141 (V.I. Terr. Ct. 1989).  In *Alvarez*, the former

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 35

Territorial Court of the Virgin Islands also granted summary

judgment for the defendant employer.  The court explained that

"the defendant's exercise of its discretion in discharging [the

plaintiff] does not rise to the level of conduct" necessary to

maintain an intentional infliction of emotional distress claim.

*Id.* at 147.

    In light of this authority, the Court finds that the

Defendants have met their summary judgment burden to the extent

McDonald's claim is predicated on his dismissal from The *Daily

News*.  Simply put, there is nothing so outrageous or conscience-

shocking in the circumstances of that dismissal to sustain such a

claim.[17]

    To the extent McDonald's claim is based on McDonald's

allegations pertaining to breach of contract, fraud or assault,

summary judgment is appropriate.  The Court has addressed those

claims and dismissed them.  The conduct underlying those claims

cannot sustain McDonald's intentional infliction of emotional

---

    [17]  Where, as here, "the moving party makes a case for
summary judgment, the party opposing the motion has an
*affirmative duty to set forth specific facts* showing there is a
genuine issue for trial." *United Transp. Union v. Conemaugh & B.
L. R. Co.*, 894 F.2d 623, 628 (3d Cir. 1990) (emphasis supplied;
quotation marks and citation omitted).  By electing not to
address the Defendants' arguments with respect to his intentional
infliction of emotional distress claim, McDonald has failed to
meet that burden.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 36

distress claim.  However, to the extent Count Seven is based on the conduct alleged in McDonald's defamation claim, it survives summary judgment.

Accordingly, the Court will deny the Defendants' motion with respect to Count Seven but only to the extent that the conduct alleged in that count is predicated on McDonald's defamation allegations.

## G.   Count Eight

In Count Eight, McDonald alleges that the Defendants' actions constitute an abuse of process.  He asserts that they filed a counterclaim against him in this matter "supported by . . . false statements and seeking a determination that [he] left work without good cause in the State of Florida." (Second Am. Compl. ¶ 38.)

Under Virgin Islands law, "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977).  An abuse of process claim may lie "where the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 37

275, 281 (3d Cir. 2006) (unpublished; stating Pennsylvania law; citation omitted).  Examples of conduct that may constitute an abuse of process include intentionally withholding critical documents, ignoring court orders, permitting false testimony at depositions and misrepresenting facts to opposing counsel and the court. *See Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 301 (3d Cir. 2003).

McDonald filed this action in February 2004.  The Defendants subsequently filed a counterclaim in which they allege that McDonald owes The *Daily News* the $3,000 allotted to him to cover his moving expenses.  According to the Defendants, McDonald's contract mandated the return of that money in the event McDonald's tenure with The *Daily News* was shorter than the two years to which McDonald was contractually committed.

On the record before the Court, there is nothing to suggest that the Defendants' counterclaim was primarily intended to "pervert" the legal process. *See Finney v. Royal SunAlliance Ins. Co. (In re Finney)*, 184 Fed. Appx. 285, 289 (3d Cir. 2006) (unpublished).  First, McDonald's employment contract clearly states that the $3,000 was subject to forfeiture in the event McDonald did not complete a two-year term.  It is undisputed that McDonald did not remain at The *Daily News* for two years. Therefore, because the reimbursement provision in the letter was

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 38

arguably triggered, the Defendants' counterclaim cannot be
characterized as wholly unfounded. *Cf. Refractories Co.*, 337 F.3d
at 308 (explaining that abuse of process liability may attach
where the process is "so *lacking in justification* as to lose its
legitimate function as a reasonably justifiable litigation
procedure") (emphasis supplied; quotation marks and citations
omitted).

Second, under Federal Rule of Civil Procedure 13(a)(1)(A),
the Defendants may have been required to file their counterclaim
because it arose "out of the transaction or occurrence" that
forms the basis of McDonald's claims against the Defendants. *See*
Fed. R. Civ. P. 13(a)(1)(A); *see also*, *e.g.*, *Finney*, 184 Fed.
Appx. at 290 (finding no abuse of process where the defendant
"filed a *compulsory* counterclaim") (emphasis supplied).

Finally, the Defendants moved to dismiss their
counterclaim.[18]  The Court granted that motion and dismissed the
counterclaim.

Under these circumstances, the Court sees no facts based on
which McDonald could prevail on his abuse of process claim.[19]

_____

[18]  McDonald filed a notice of non-objection to the motion to
dismiss the counterclaim.

[19]  Indeed, in his opposition, McDonald does not address his
abuse of process claim.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 39

*See*, *e.g.*, *Marable*, 176 Fed. Appx. at 282 (finding no abuse of process where "there is simply no evidence in the record" that certain litigants "had as their primary purpose some objective for which the legal process . . . was not intended").

Accordingly, the Court will grant the motion for summary judgment with respect to Count Eight.

**H.   Count Nine**

In Count Nine, McDonald claims that the Defendants have violated the "Fair Wage and Hours Act." (Second Am. Compl. ¶ 68.) That count contains no citation to any statutory provision. McDonald seems to assert a claim under either the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "federal FLSA") or the Virgin Islands Fair Labor Standards Act, V.I. CODE ANN. tit. 24, §§ 1-23 (the "Virgin Islands FLSA"), or both.  He alleges that the Defendants did not pay him for overtime and work performed during holidays and on weekends.  He seeks to recover unpaid wages.

The Defendants maintain that Count Nine is time-barred. With respect to the federal FLSA, they point to section 255, which provides, in relevant part:

> Any action commenced on or after the date of the enactment of this Act . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended . . . --

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 40

> (a) if the cause of action accrues on or after the date
> of the enactment of this Act . . . –– may be commenced
> within two years after the cause of action accrued, and
> every such action shall be forever barred unless
> commenced within two years after the cause of action
> accrued, except that a cause of action arising out of a
> willful violation may be commenced within three years
> after the cause of action accrued[.]

29 U.S.C. § 255(a).

The Defendants argue that the two-year limitations period applies because there is no allegation of a willful violation. They contend that because McDonald's last day of work was in December 2003, his last day for filing his unpaid wages claim was in December 2005.[20]  According to the Defendants, McDonald did not add his claim until he filed his second amended complaint in May 2008.  They further argue that the relation-back doctrine is inapplicable because, in their view, the original and first amended complaints "strictly address McDonald's allegations of constructive discharge and other related peripheral claims." (Defs.' Mem. in Support of Mot. for Summ. J. at 26.)

The parties do not dispute that McDonald's federal FLSA claim began to accrue in December 2003 or that he did not assert that claim until May 2008.  That claim is therefore time-barred unless McDonald can avail himself of the relation-back doctrine.

----

[20]  They also point out that, even assuming the three-year period applied, McDonald had until December 2006 to file his claim.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 41

Federal Rule of Civil Procedure 15(c)(1)(B) provides, in

pertinent part:

> An amendment to a pleading relates back to the date of
> the original pleading when:
>
> (B) the amendment asserts a claim or defense that arose
> out of the conduct, transaction, or occurrence set out
> — or attempted to be set out — in the original
> pleading[.]

Fed. R. Civ. P. 15(c)(1)(B).

"Claims arise out of the same conduct, transaction, or

occurrence if they share a common core of operative facts such

that the plaintiff will rely on the same evidence to prove each

claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir.

2008) (quotation marks and citations omitted).  This requirement

is meant to ensure that the defendant is put on adequate notice

of the newly asserted claims. *Martell v. Trilogy Ltd.*, 872 F.2d

322, 326 (9th Cir. 1989).  Once this requirement is met, Rule 15

"instructs that the amendment relates back to the date of the

original pleading." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d

Cir. 2006) (alteration, quotation marks and citations omitted).

The question whether a party exhibited undue delay in seeking

leave to amend is not relevant to the Rule 15(c) inquiry. *Id.*

("Undue delay is a reason to deny leave to amend but not to deny

relation back.") (quotation marks and citations omitted).

Here, there is no common core of operative facts between the

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 42

several claims asserted in the original complaint and the federal FLSA claim.  The facts alleged in McDonald's original complaint bear on McDonald's employment negotiations with the Defendants, subsequent engagement as a reporter and ultimate departure from The *Daily News*.  A comparison of those allegations with the second amended complaint leaves no room for doubt that McDonald has alleged additional facts arising out of a separate course of dealing to support his federal FLSA claim.  For the first time in this litigation, for instance, McDonald alleges that "[t]he Defendants . . . caused Plaintiff to work overtime on holidays and weekends without paying him overtime pay." (Second Am. Compl. ¶ 23.)  He also alleges for the first time that the Defendants "lied and misrepresented to Plaintiff that their actions were legal and in keeping with the Fair Wage and Hours laws." (*Id.* ¶ 24.)

To substantiate his new factual allegations, McDonald would need different witnesses and evidence to prove that he was compelled to work overtime, that he was not paid for that work and that the Defendants were mendacious and acted unlawfully in failing to pay him.  In short, because McDonald's federal FLSA claim depends entirely on facts not asserted in the original complaint, it does not relate back to the original complaint. *See*, *e.g.*, *Williams*, 517 F.3d at 1133 ("The compensation

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 43

discrimination claim is a new legal theory depending on different
facts [from those needed to support the promotion discrimination,
hostile work environment, and retaliation claims], not a new
legal theory depending on the same facts.") (citations omitted);
*Cupertino v. Schneider*, No. 92-2067, 1992 U.S. App. LEXIS 32556,
at *2-3 (4th Cir. Dec. 15, 1992) (per curiam; unpublished)
("Because the negligent entrustment claim involved a different
legal theory and rested on different facts than the respondeat
superior claim and the accident itself, . . . the relation-back
provision of . . . is inapplicable.").

    With respect to the Virgin Islands FLSA claim, the
Defendants contend that because of the similarities between the
Virgin Islands FLSA and the federal FLSA, the federal statute of
limitations should apply to the Virgin Islands statute.  That
approach has been considered and rejected by the Third Circuit
under similar circumstances.

    In *Gomez v. Government of Virgin Islands*, 882 F.2d 733 (3d
Cir. 1989), Charles Gomez was a police officer employed by the
Virgin Islands Department of Public Safety and a member of the
Police Benevolent Association.  His employment was governed by a
collective bargaining agreement between the Department and the
Association.  On July 24, 1984, Gomez was notified by letter that
he had been dismissed effective July 2, 1984 for violating

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 44

Department rules.  On September 5, 1986, Gomez sued the

Department and the Association under the Virgin Islands Public

Employee Labor Relations Act, V.I. CODE ANN. tit. 24, §§ 361-383

(the "PELRA").  He alleged that the Department had breached its

contract with him by improperly discharging him and that the

Association had breached its duty to fairly represent him by

refusing to arbitrate his claim.  This Court granted the

defendants' motion for summary judgment, concluding that a six-

month federal statute of limitation barred Gomez's suit.  After

taking additional procedural steps not relevant here, Gomez

appealed.

On appeal, the Third Circuit asked which statute of

limitations should apply to Gomez's suit.  The court began by

noting that the PELRA neither contained nor expressly

incorporated a statute of limitations.  The court therefore

examined "whether any other statute of limitations within the

body of Virgin Islands law expressly applies to this action."

*Gomez*, 882 F.2d at 738.  The court acknowledged that because the

PELRA was modeled on the National Labor Relations Act, "it would

normally be appropriate to analogize from case law under [the

federal statute] in interpreting [the Virgin Islands statute]."

*Id.*  While the court found that approach "initially appealing[,]"

it concluded that such an approach was precluded "by the express

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 45

terms of V.I. CODE ANN. tit. 5, § 31." *Id.*  That provision states
that "[c]ivil actions shall only be commenced within the periods
prescribed below after the cause of action shall have accrued,
*except when, in special cases, a different limitation is
prescribed by statute.*" V.I. CODE ANN. tit. 5, § 31 (emphasis
supplied).  Based on this provision, the Third Circuit explained
that "the Virgin Islands legislature has not left the choice to
the courts, but has made its own determination that the general
civil statute of limitations should apply." *Gomez*, 882 F.2d at
738.  The court further reasoned that it was "not free to ignore
the command of the Virgin Islands legislature as embodied in the
language of V.I. CODE ANN. tit. 5, § 31." *Id.*  Accordingly, the
court reversed and remanded for a determination whether Gomez's
suit was time-barred under Virgin Islands law.

In this matter, the Virgin Islands FLSA does not contain or
expressly incorporate a statute of limitations.  In conformity
with V.I. CODE ANN. tit. 5, § 31, the Court must therefore apply
the limitations period prescribed by the Virgin Islands
Legislature.  McDonald's FLSA claim against the Defendants is for
unpaid wages.  Virgin Islands law does not specifically impose a
limitations period on such a claim.  Section 31(3)(B) prescribes
a six-year limitations period for "[a]n action upon a liability
created by statute, other than a penalty or forfeiture." V.I.

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 46

CODE ANN. tit. 5, § 31(3)(B).  McDonald's claim arises out of work

he performed for the Defendants in 2003.  He commenced this

action in 2004 and asserted his Virgin Islands FLSA claim in

2008.  As such, his Virgin Islands FLSA claim is timely. *See*,

*e.g.*, *Williams v. Blyden*, 45 V.I. 90, 96 (V.I. Terr. Ct. 2002)

(finding that Section 31(3)(B) applied to a claim brought under

the Virgin Islands Career Incentive Pay Program, V.I. CODE ANN.

tit. 3, § 570, because that statute "does not provide a specific

statute of limitations").

Accordingly, the Court will grant the Defendants' motion

with respect to Count Nine as it pertains to the federal FLSA

claim and deny the motion as it pertains to the Virgin Islands

FLSA claim.

## I.   **Count Ten**

In Count Ten, McDonald alleges that the Defendants' conduct

was "so outrageous and done with such disregard for [his] rights

and interests" that he is entitled to punitive damages. (Second

Am. Compl. ¶ 71.)

The Defendants seek summary judgment on Count Ten on the

ground that a punitive damages count is not independently

actionable.  They rely on *Urgent v. Hovensa, LLC*, Civ. No. 2006-

105, 2008 U.S. Dist. LEXIS 77455 (D.V.I. Oct. 2, 2008).  In

*Urgent*, this Court dismissed a punitive damages count on the

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 47

defendant's motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6).  The Court reasoned that such a claim "is not

a distinct cause of action and was improperly plead[ed] as a

separate count." *Id.* at *31.

Other courts have employed similar reasoning in dismissing

separately pleaded punitive damages counts. *See*, *e.g.*, *Stucky v.

Hawaii*, Civ. No. 06-00594, 2008 U.S. Dist. LEXIS 5627, at *80-81

(D. Haw. Jan. 25, 2008) ("A claim for punitive damages is not an

independent tort, but a remedy that is incidental to another

cause of action.") (citation omitted); *Kraus v. Howroyd-Wright*

*Empl. Agency, Inc.*, Civ. No. 06-975, 2008 U.S. Dist. LEXIS 1254,

at *43 (E.D. Pa. Jan. 8, 2008) ("[I]t is well settled that a

request for punitive damages is not a cause of action in and of

itself.") (citation omitted); *Fuller v. Mickelson*, Civ. No.

07-00291, 2007 U.S. Dist. LEXIS 80530, at *5 (D. Colo. Oct. 31,

2007) ("[A] claim for exemplary damages is not a separate claim

but is ancillary to an underlying claim.") (citations and

footnote omitted); *Rhodes v. Haynes*, Civ. No. 06-1703, 2007 U.S.

Dist. LEXIS 63563, at *10-11 (E.D. Mo. Aug. 28, 2007) (dismissing

a separately pleaded punitive damages claim).

Considering the weight of authority, the Court agrees that

McDonald's punitive damages claim cannot stand alone.  Indeed,

McDonald elects not to contest the Defendants' argument in this

*McDonald v. Davis, et al.*
Civil No. 2004-93
Memorandum Opinion
Page 48

vein.

Accordingly, the Court will grant the motion with respect to Count Ten.[21]

### IV.   <u>CONCLUSION</u>

For the reasons given above, the Court will partially grant and partially deny the Defendants' motion for summary judgment. An appropriate order follows.

S\_____
**Curtis V. Gómez**
**Chief Judge**

_____

[21]   The Court's ruling is, of course, without prejudice to McDonald's request for punitive damages at the appropriate stage of these proceedings.